**BRENTWOOD ACADEMY,**
Plaintiff–Appellee,

v.

**TENNESSEE SECONDARY SCHOOL ATHLETIC ASSOCIATION; Ronnie Carter, Executive Director and Individually, Defendants–Appellants.**

No. 98–6113.

United States Court of Appeals,
Sixth Circuit.

Aug. 30, 1999.*

H. Lee Barfield, II, William Scott Sims, Bass, Berry & Sims, Nashville, TN; Bob-

by Lee Cook, Cook & Connelly, Summerville, GA; James F. Blumstein, Nashville, TN; G. Thomas Nebel, Nashville, TN, for Brentwood Academy.

Charles Hampton White, Richard L. Colbert, Cornelius & Collins, Nashville, TN, for Tennessee Secondary School Athletic Association and Ronnie Carter.

John J. Kitchin, Kansas City, MO, for National Federation of State High School Associations.

Edmund J. Sikorski, Jr., Ann Arbor, MI, for Michigan High School Athletic Association, Inc.

Steven L. Craig, Herbruck, Heichel & McFarren, Canton, OH, for Ohio High School Athletic Association.

Mallory V. Mayse, Colombus, MO, for Missouri State High School Activities Association.

Danny C. Reeves, Greenebaum, Doll & McDonald, Lexington, KY, for Kentucky High School Athletic Association.

Leonard E. Ireland, Jr., Clayton, Johnston, Quincey, Ireland, Felder, Gadd, Roundtree, Gainesville, FL, for Florida High School Activities Association, Inc.

Terrence E. Kiwala, Rooks, Pitts & Poust, Chicago, IL, for Illinois High School Association.

Before: GUY, SUHRHEINRICH, and GILMAN, Circuit Judges.

### ORDER

This matter is before the Court upon Brentwood Academy's petition for rehearing *en banc*. Having failed to achieve the requisite number of votes to sustain the request for rehearing, the petition has been referred to the original hearing panel.

The panel has further reviewed the petition for rehearing and concludes that the issues raised in the petition were fully

---

* This order was originally issued as an "unpub-lished order" filed on August 30, 1999.

considered upon the original submission and decision of the case. However, the panel will briefly address Brentwood Academy's argument that our decision is in conflict with earlier Sixth Circuit cases.

Because we have already addressed the cases of *Burrows v. Ohio High School Athletic Association*, 891 F.2d 122 (6th Cir.1989), *Yellow Springs v. Ohio High School Athletic Association*, 647 F.2d 651 (6th Cir.1981), and *Alerding v. Ohio High School Athletic Association*, 779 F.2d 315 (6th Cir.1985), in our published opinion, we find no need to comment any further on those cases. As to *Cape v. TSSAA*, 563 F.2d 793 (6th Cir.1978), *Hamilton v. TSSAA*, 552 F.2d 681 (6th Cir.1976), and *Morris v. Michigan State Board of Education*, 472 F.2d 1207 (6th Cir.1973), they all pre-date the Blum trilogy. *See Blum v. Yaretsky*, 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982), *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), and *Rendell–Baker v. Kohn*, 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982). The *Blum* trilogy establishes the current standard for determining when a private party's conduct can be considered state action and supercedes the earlier decisions in *Cape, Hamilton*, and *Morris*. Because of this, those cases were not discussed in our opinion.

Accordingly, the petition is denied.

**MERRITT, Circuit Judge, separate statement on denial of rehearing en banc, in which Clay, Circuit Judge, joined.**

Although a substantial minority of the active judges of our court have voted for en banc review of this case, unfortunately, there was not a majority. This is an important case because all high school interscholastic athletic contests in the states of the Sixth Circuit and in almost all other states in the country are conducted in similar fashion by athletic associations like the TSSAA.

Our court should grant en banc review in this case on the issue of whether the TSSAA—the agency delegated the author-ity to control all high school athletic contests in Tennessee—is engaged in "state action" under the Fourteenth Amendment. It should do so because our panel's holding that TSSAA is not a "state actor" contradicts the uniform case law in the field from other circuits and is inconsistent with the clearly established constitutional theory of state action. Under the panel's theory that such statewide athletic associations are not state actors, and hence not subject to fourteenth amendment restraints, the TSSAA could maintain a racially segregated system of interscholastic high school athletics like the one declared invalid in *Louisiana High School Athletic Ass'n v. St. Augustine High School*, 396 F.2d 224, 227 (5th Cir.1968) (private black high school sued LHSAA and the court held "there can be no substantial doubt that conduct of the affairs of LHSAA is state action in the constitutional sense"), or refuse to allow girls to participate in interscholastic high school athletics, *see Clark v. Arizona Interscholastic Ass'n*, 695 F.2d 1126, 1128 (9th Cir.1982) (suit by a student to test gender regulations of AIA and the court held that "AIA regulations in question [respecting gender] meet the state action requirement of the fourteenth amendment"). The panel's decision that TSSAA is not a state actor is also inconsistent with at least four other circuit court decisions. The Third, Seventh, Eighth and Tenth Circuits have also held that high school interscholastic athletic associations are state actors. *See Moreland v. Western Pennsylvania Interscholastic Athletic League*, 572 F.2d 121, 125 (3d Cir.1978); *Griffin High School v. Illinois High School Ass'n*, 822 F.2d 671, 674 (7th Cir.1987); *In Re: United States, ex rel. Missouri State High School Activities Ass'n*, 682 F.2d 147, 151 (8th Cir.1982); *Oklahoma High School Athletic Ass'n v. Bray*, 321 F.2d 269, 273 (10th Cir.1963). In addition, all of the several state supreme courts which have addressed the question have held that their high school interscholastic athletic associations are state actors. I find no circuit or state

supreme court decision supporting our court's cramped view of state action, and our panel's opinion does not recognize or discuss these authorities from other courts.

In addition the panel's decision appears to be inconsistent with the Supreme Court's language in *National Collegiate Athletic Association v. Tarkanian*, 488 U.S. 179, 193, 109 S.Ct. 454, 102 L.Ed.2d 469 (1988), quoted below, citing with approval the Louisiana and Arizona cases mentioned above:

> Those institutions [of higher education], the vast majority of which were located in states other than Nevada, did not act under color of Nevada law. It necessarily follows that the source of the legislation adopted by the NCAA is not Nevada but the collective membership, speaking through an organization that is independent of any particular state. [13]
>
> > [13] The situation would, of course, be different if the membership consisted entirely of institutions located within the same state, many of them public institutions created by the same sovereign. *See Clark v. Arizona Interscholastic Ass'n*, ... [and] *Louisiana High School Athletic Ass'n v. St. Augustine High School*. ...

The panel's decision also appears to be inconsistent with our court's ruling in *Alerding v. Ohio High School Athletic Ass'n*, 779 F.2d 315, 316 n. 1 (6th Cir.1985): "OHSAA is a state actor for purposes of § 1983 because Ohio has implicitly delegated to OHSAA its power to regulate and organize interscholastic athletic activities."

The panel's decision seems clearly inconsistent with the theory of state action set out in *West v. Atkins*, 487 U.S. 42, 55–56, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). There a unanimous Court said that state action analysis requires a "functional" analysis of the activity of the private individual or agency in question to determine the degree of "cooperation" between state and local officials and the actor and an analysis of the degree of "coercion" exercised by the actor over persons under the control of a state or local governmental institution. Our panel made no effort to analyze the cooperative relationship between TSSAA and the state's public high schools or the coercive power of TSSAA. The fact is that TSSAA establishes and enforces all of the rules by which high school teams and players, at both public and private schools, compete throughout the state of Tennessee. Its board consists entirely of public school officials. Its funding comes from receipts from the athletic contests of public schools. The state delegates to TSSAA its authority to collect and retain gate receipts from public interscholastic contests. The state has chosen to allow its athletic fields and gyms to be used in this way. It has chosen to make TSSAA its agent for controlling an important, highly visible component of its statewide educational program—inter-school athletics.

The Tennessee Department of Education delegates all of its plenary authority to control high school athletics to TSSAA. TSSAA has run high school interscholastic athletics with an iron hand for most of this century. For the most part, it has done a very good job; but under the panel's ruling that the fourteenth amendment does not apply to TSSAA because it is not a state actor, TSSAA could rule ineligible for competition high school athletes on the basis of race, gender, national origin, or religion. It could disqualify, suspend or otherwise punish high schools and their students without notice and without a statement of reasons or a hearing or the other procedural protections provided by the due process clause.

Because our panel's decision is inconsistent with the basic authorities on state action, and with the well-established legal theory underlying their holdings, I dissent from our failure to grant en banc review of this case. We have created an unnecessary conflict in the circuits on an important question of constitutional law. The

conflict will have to be remedied now by the Supreme Court.