The **CALLAND CORPORATION,**
Appellant,

v.

**UNITED INSURANCE COMPANY OF AMERICA et al.,** Appellees.

The **CALLAND CORPORATION,**
Appellant,

v.

**William N. BOWIE, Jr., Trustee, and United Insurance Company of America,**
Appellees.

Nos. 21175A–F, 22316.

United States Court of Appeals
Ninth Circuit.

March 13, 1969.

Rehearing Denied April 8, 1969.

A. V. Falcone (argued), of Falcone & Falcone, Los Angeles, Cal., for appellant.

Arnold L. Kupetz (argued), of Sulmeyer & Kupetz, Los Angeles, Cal., for Wm. N. Bowie, Jr.

Eugene Kelly (argued), Los Angeles, Cal., for United Ins. Co.

Before DUNIWAY and ELY, Circuit Judges, and TAYLOR *, District Judge.

DUNIWAY, Circuit Judge:

These are seven appeals, all growing out of an attempted reorganization under Chapter XI of the Bankruptcy Act. Appellant's principal asset was an apartment complex in West Covina, California. Appellee, United Insurance Co., had loaned $700,000 in January of 1963 to finance the construction of these apartments. The loan was secured by a first deed of trust. The apartments were built, but appellant was unable to keep up the payments to United. On November 10, 1964, appellant filed a voluntary petition under Chapter XI of the Bankruptcy Act, section 322 (11 U.S.C. § 722). The referee appointed appellee William N. Bowie, Jr., receiver, and on November 20, 1964, entered an order restraining United from selling the apartments under its deed of trust. Approximately two months later, on February 17, 1965, the referee entered an order which purported to vacate the prior order as of March 4, 1965.

FIRST APPEAL

The first appeal is from the District Court's affirmance of the order of February 17, 1965. Appellant claims that the referee abused his discretion, and charges incompetence, bias, mismanagement, bad faith, fraud, estoppel and various other heinous practices on the part of appellees and others.

██ Appellant says that it should have been permitted to remain in possession. The relevance of this claim to the issue of abuse of discretion in vacating the November 20, 1964 restraining order escapes us. Appellant claims that it was not proved that it was in default under the first deed of trust. There is direct testimony, not contradicted, that it had been in default since March 1, 1964. Appellant claims that it was given insufficient opportunity to rebut United's evidence that it was in default. The record is to the contrary. Appellant claims that United was estopped to foreclose its trust deed because, in the summer of 1964, United had promised not to foreclose if appellant performed. The short answer is that appellant did not perform.

 On June 3, 1964 (before appellant's voluntary petition was filed), appellant had contracted to sell the apartments to one Leonard Cohen, who went into possession (the contract of sale later fell through). Appellant then asked United to cooperate with Cohen by giving him additional time to make payments, and United agreed and did so. Appellant claims that this was a novation. This

---

* Honorable Fred M. Taylor, United States District Judge, District of Idaho, sitting by designation.

claim is frivolous. See, *e. g.*, Fountainbleau Hotel Corp. v. Crossman, 5 Cir., 1963, 323 F.2d 937, 942–943. Appellant claims that United was guilty of bad faith in granting Cohen "breathing time" which it had refused to grant to appellant. This claim is equally frivolous.

Although appellant at one point complained that the repair bills had been increasing too much during the receiver's operation of the property, it now complains that the receiver paid no taxes and made no improvements or repairs. The relevance of this claim to the validity of the order also escapes us. In any event, there was ground for the receiver to believe that appellant had no equity in the property.

Appellant claims that United made detrimental statements about the property, thus creating a serious obstacle to any refinancing. The only "evidence" to support the claim is a "declaration" containing multiple hearsay. The declarant did not testify. Appellant claims fraud and bad faith in United's allegedly procuring the appointment of one of its own employees as a state receiver who served before the filing of appellant's petition. These allegations are completely outside the record. Their relevancy also escapes us.

Appellant contends that the referee erred in valuing the apartment complex at $870,000. The referee appointed an independent appraiser who had been appraising real and personal property in the area for 27 years. He valued the property at $850,000. The referee was not required to accept the valuation of appellant's appraiser.

We finally reach the heart—if there is one—of the first appeal: did the referee abuse his discretion in ordering the vacating of the restraining order as of March 4, 1965, unless appellant had by then come up with a bona fide reorganization plan or sale of the property? Appellant claims that this order gave it insufficient time. The order complained of was not signed and filed until February 17, 1965 (less than 20 days before March 4), but appellant had known since at least January 13, 1965, that March 4 would be the cut-off date. At a hearing on January 13, 1965, appellant's own counsel had said that 45 to 60 days would not be unreasonable. From January 13 to March 4 was 50 days. Furthermore, the order did not go into effect until many months later. On March 3, 1965, appellant petitioned the District Court for review of the order; that court stayed the order pending review. It affirmed the order on October 4, 1965, but stayed it for an additional 15 days to give appellant opportunity to file a bond. When appellant failed to do this, United finally bought the property at the trustee's sale on October 21, 1965. Appellant thus had more than nine months to come up with a plan or a buyer. We find no abuse of discretion. Mündt v. Home Federal Savings & Loan Ass'n, 9 Cir., 1965, 349 F.2d 938, cert. denied, Mündt v. Zaluskey, 385 U.S. 871, 87 S.Ct. 142, 17 L.Ed.2d 98.

The first appeal is without merit.

## OTHER APPEALS

What we have said disposes also of the second, third, fourth, and seventh appeals.

The fifth appeal involves an insurance draft for $2,380.20 payable because of a fire loss which occurred on August 5, 1964, before appellant filed its Chapter XI petition. The referee ordered that the draft be paid to United. This was clearly correct. The insurance policy specifically insured both appellant and United as their interests might appear, and the Deed of Trust provided that "The amount collected under any fire or other insurance policy may be applied by Beneficiary [United] upon any indebtedness secured hereby * * *."

The sixth appeal questions the correctness of the referee's order of May 6, 1966, which denied confirmation of appellant's so-called "plan of arrangement" and adjudged appellant a bankrupt. That appeal is also frivolous. The first meeting of creditors was held on

December 9, 1964, and was continued from time to time for more than a year. Appellant finally filed its "plan of arrangement" on March 25, 1966. The referee set a hearing on April 26, 1966, at which appellant admitted that it had not filed an application for confirmation of the plan, that it had not obtained consents from any of the approximately 61 general unsecured creditors, and that it had not made any deposit, all as required by Bankruptcy Act § 362, 11 U.S.C. § 762. There was no error. Bankruptcy Act § 376(2), 11 U.S.C. § 776(2). See In re Webcor, Inc., 7 Cir., 1968, 392 F.2d 892.

Were it not that appellant's voluminous briefs are replete with charges of bias, bad faith, fraud, etc., we would have disposed of these appeals by a simple order of affirmance. But because of those charges, we have taken the time to elaborate. The appellant has abused the processes of the trial court and of this court. Its first appeal was taken on November 2, 1965, and its last, in No. 21,175, on August 29, 1966. The seventh appeal, No. 22,316, which has the least merit of any, was taken August 29, 1967. In a Chapter XI proceeding, reasonable expedition is important, and it is regrettable that our court has made its contribution to inexcusable delay. Appellant's counsel obtained eleven extensions of time to file an opening brief, which was not finally filed until April 7, 1968. The answering briefs were filed approximately two months later. Appellant was successful in obtaining further extensions and did not file its reply brief until August 14, 1968. The performance of appellant and its counsel is inexcusable, but in the light of our own improvidence, we are hardly in the position to impose sanctions.

Affirmed.