Robert TAYLOR, etc., et al., Plaintiffs,

v.

The ALABAMA HIGH SCHOOL ATH-LETIC ASSOCIATION, etc., et al., Defendants.

Civ. A. No. 3530-N.

United States District Court, M. D. Alabama, N. D.

Jan. 7, 1972.

---

Rosen, Wright & Harwood, Tuscaloosa, Ala., for plaintiffs.

Rushton, Stakely, Johnston & Garrett by Oakley Melton, Jr., Montgomery, Ala., for defendants.

## MEMORANDUM OPINION

VARNER, District Judge.

This cause is now submitted upon Defendants' Motion to Dismiss, incorporated as the first defense of their answer, filed herein on December 29, 1971, and based on absence of a federal right.

Plaintiffs herein, basketball players of Druid High School, seek relief from one of several sanctions imposed upon them by Defendants arising from the following alleged circumstances. On the evening of March 1, 1971, Druid High School and Tuscaloosa County High School played basketball against each other as the finalists in a regional championship tournament. During the game there were incidents of unruliness and misconduct by spectators. Tuscaloosa County High School defeated Druid High School by a close margin and, after the game, there were instances of rock throwing and rocking of automobiles by members of the crowd in the parking lot. A number of arrests were made, and the people arrested were tried in the Tuscaloosa City Recorder's Court, and of those convicted, only five were students at Druid High School.

The Defendant, Alabama High School Athletic Association, investigated the disorder, and on March 8, 1971, Defendant, Herman L. Scott, as Executive Secretary of the Alabama High School Athletic Association wrote a letter to the principals of the two schools involved advising them that the Central Board of Control of the Association would hold a hearing on the incidents on March 17, 1971. This letter requested the attendance of the coaching staffs and principals of the respective schools and stated that no other people would be permitted. On March 17, 1971, the scheduled hearing was held in Birmingham, Alabama.

On March 23, 1971, the said Herman L. Scott wrote the principals of the respective schools advising them of the "determinations" made by the Board. Sanctions imposed on Druid High School included a prohibition against their hosting or participating in invitational basketball tournaments for a period of one year.

This cause was filed by Plaintiffs on December 7, 1971, under the provisions of 42 U.S.C. § 1983, and the due process clause of the Fourteenth Amendment of the Constitution. Pertinent provisions of those laws are as follows:

"§ 1983. Every person who, under color of any statute * * * custom, or usage, of any State * * *, subjects * * * any citizen * * * to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured * * *."

## AMENDMENT XIV

"§ 1. * * * No state shall * * * deprive any person of life, liberty, or property, without due process of law * * *."

Plaintiffs contend that due process as protected by the Fourteenth Amendment to the Constitution was violated in the following aspects:

1. There were no pre-existing standards and regulations upon which the Central Board of Control might structure discipline.

2. There were no standards or rules to guide the Board as no punishments were provided for the violations of rules.

3. No specific charge of misconduct was made against Druid High School

prior to the March 17, 1971, hearing of the Central Board of Control.

4. No notice of any specific charge was given Druid High School prior to the hearing.

5. No opportunity was afforded Druid High School for an adequate hearing because (a) of lack of notice of the charges; (b) it was denied witnesses and representatives as attendance was limited specifically by the Board of Control to certain officials of the school.

6. No hearing of the District Board of Managers of District Five was convened as required by Article 5 of the Constitution of the Alabama High Athletic Association.

7. The penalties imposed upon Druid High School and its students exceeded any other penalties ever imposed for comparable incidents or incidents which actually exceeded those involved, and the individual plaintiffs were thereby deprived of their right to participate in invitational tournaments, regional championship tournaments, and the state tournament and the opportunities thereunto associated to display their athletic abilities to the end of attaining athletic scholarships to college.

The parties do not contest the fact that the Defendants were acting under color of state law, they being officials of the Alabama High School Athletic Association, a state body. The authorities are in accord. Mitchell v. Louisiana High School Athletic Association, 430 F.2d 1155, 1157 (5 CCA); Louisiana High School Athletic Association v. St. Augustine High School, 396 F.2d 224, 227–228 (5 CCA, 1968); Oklahoma HSAA v. Bray, 321 F.2d 269, 272–273 (10 CCA, 1963).

Plaintiffs vigorously insist that the leading case on the subject is and should be the case of Kelley, et al. v. Metropolitan County Board of Education of Nashville and Davidson County, Tennessee, et al., 293 F.Supp. 485 (D.C.Tenn.1968). That case, while recognizing the School Board's authority to establish and supervise athletic programs for public schools,

held that, in view of lack of any pre-existing standards and regulations to structure any disciplinary action taken by a school board and the lack or absence of any formal charge against the school or its students, the suspension, by the school board, of the athletic program of an all-Negro high school for a period of one year denied the school and its students the protection of procedural due process.

That case recognized, and no question is here made, that the "notice" aspect of due process is satisfied if notice and opportunity to defend are afforded to responsible persons whose positions require them to represent and speak for the entire group, including the students of the school, and that a school principal occupies such a position. Kelley v. Metropolitan Board of Education, supra, at page 496. However, whether or not the principal's notice properly informed him of the nature of the proceeding is a problem in the instant case.

*Kelley* is strongly parallel to the instant case. On facts, the *Kelley* case appears to vary from the instant case largely in degree, if at all. In both cases, an all-Negro school's athletic program was curtailed to discipline the school for unsportsmanlike conduct or misbehavior at an athletic contest, and the suspension was invoked for a period of one year. While both schools were, for practical purposes, all-Negro high schools, no insistence is made that race played any part in the decision in the instant case, and in *Kelley*, supra, the evidence established that race played no part in the action of the school board. In each case, strong questions were raised regarding the satisfaction of due process because of impropriety of the form of the charge of misconduct, the notice of the charge of misconduct, the opportunity to defend the charge, and the vagueness of the rule which the school or some of its supporters were alleged to have violated. No contention was made in either case that, if the plaintiffs were entitled to a hearing satisfying the requisites of due process, ei-

ther hearing would have reached the mark.

The defenses made in the two cases appear to be somewhat different. In the instant case, the Defendants, relying on the authority of Mitchell, et al v. Louisiana High School Athletic Association, supra, 430 F.2d at 1158, insist that the privilege of participating in interscholastic athletics is not a property right and is, therefore, outside of the protection of the due process clause of the Fourteenth Amendment. Clearly the "due process" clause of the Constitution, insofar as it applies to the question at issue here, must relate to whether or not Plaintiffs in this cause were denied any "property".

In *Kelley*, supra, the defense that the privilege of participating in interscholastic athletic competition is not a federally protected right appears not to have been seriously litigated, though the court held that a deprivation of such rights without conforming to the requirements of due process violated the Fourteenth Amendment to the Constitution of the United States.

This Court is, therefore, not certain that the *Kelley* case, relied upon by Plaintiffs, is in conflict with authority in the Fifth Circuit to the effect that the privilege of participating in interscholastic athletics is not a federally protected right. Whether or not such conflict exists, this Court feels bound by the authority of the several Fifth Circuit cases which are adverse to the Plaintiffs' claim. Mitchell v. Louisiana HSAA, supra; LHSAA v. St. Augustine High School, supra, 396 F.2d at 227–228; Johnson v. Hood, 430 F.2d 610 (5 CCA). The logic of the Fifth Circuit is supported by cases from other circuits. Oklahoma High School Athletic Association v. Bray, 321 F.2d 269 (10 CCA, 1963). The Supreme Court of Alabama has held that a plaintiff's possibility of acquiring an athletic scholarship if allowed to display his athletic prowess is no property right as follows:

"We hold that the speculative possibility of the complainant acquiring a football scholarship as shown under the facts presented furnishes no basis for a finding that the complainant was deprived of any property right." Scott v. Kilpatrick, 286 Ala. 129, 237 So.2d 652, 656.

Plaintiffs, with considerable logic, attempt to distinguish the instant case and *Kelley*, supra, from the Fifth Circuit cases and the Alabama case on the basis that Plaintiffs in these cases allege a substantial property interest by virtue of allegations of their strong probabilities of obtaining college scholarships if not prohibited from displaying their proficiency in certain fields of athletics. A somewhat similar contention appears to have been made in Oklahoma High School Athletic Association v. Bray, supra, 321 F.2d at page 272, and that Court of Appeals held that no federal civil right was involved in the proceeding. The Fifth Circuit, in Mitchell v. LHSAA, supra, 430 F.2d at page 1157, cited *Bray* with approval. This, in the view of this Court, amounts to a disapproval by the Fifth Circuit Court of Appeals of Plaintiffs' contention that their chances of obtaining college scholarships upon display of their athletic prowess at tournaments is a property right protected by the due process clause.

In accordance with the above, the Defendants' Motion to Dismiss this proceeding on the ground that the Complaint fails to state a claim upon which relief can be granted should be, and the same is hereby, granted, and the Clerk of this Court is ordered to dismiss the proceeding and tax costs against the Plaintiffs.