Robert KULOVITZ, Plaintiff,

v.

ILLINOIS HIGH SCHOOL ASSOCIATION, Defendant.

No. 78 C 4856.

United States District Court, N. D. Illinois, E. D.

Dec. 21, 1978.

John J. O'Toole, Jerry L. Lambert, Dore & O'Toole, Ltd., Chicago, Ill., for plaintiff.

Wayne F. Plaza, Rooks, Pitts, Fullagar & Poust, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

FLAUM, District Judge:

The instant complaint is before the court on plaintiff's motion for a preliminary injunction and defendant's motion to dismiss or, alternatively, for summary judgment. Fed.R.Civ.P. 12, 56 & 65. Plaintiff, a student at Thornwood High School, South Holland, Illinois brings this action pursuant to 42 U.S.C. § 1983 for an injunction prohibiting defendant from interfering with plaintiff's participation in interscholastic athletics for the 1978–1979 school year.[1] Plaintiff alleges a violation of his due process and equal protection rights under the fourteenth amendment. Defendant is an association of public and parochial high schools in the State of Illinois. One of its purposes is "the development and enforcement of athletic eligibility by-laws which seek to regulate high school athletics which protect the member schools' programs of amateur athletics within an educational framework." (Astroth Affidavit). Since plaintiff has failed to state a valid constitutional claim, the court grants defendant's motion for summary judgment and dismisses the case.

The facts are not in dispute. During 1975 through 1977, plaintiff was a student

---

1. Jurisdiction is predicated upon 28 U.S.C. § 1343(3).

at Thornwood. In November, 1977 he moved to Scottsdale, Arizona. Due to academic difficulties, plaintiff was found to be ineligible for participation in athletics until the second semester of the 1978–1979 school year. Upon attaining the age of 18, plaintiff returned in June, 1978 to the Thornwood School District without his parents and took up residency with his grandmother. He continues to so reside.

In August, he inquired of officials at Thornwood concerning his ability to play interscholastic sports. On August 10, Lavere L. Astroth, defendant's executive secretary, determined that under defendant's rules plaintiff was ineligible for participation in the interscholastic athletic program for one year. In September, a factual eligibility hearing was conducted and Lavere's decision was affirmed. A full hearing of defendant's Board of Directors was conducted October 30 at plaintiff's request. Plaintiff was represented by counsel at the hearing. Counsel was furnished with a copy of the September eligibility hearing report on October 30. The Board affirmed and the plaintiff was notified October 31.[2]

In finding him ineligible, the Board relied on the Association's transfer rule.

Transfer Rule 3.041: If students transfer from attendance in one high school district to attendance in another high school district, they shall be ineligible for a period not to exceed one year unless their parents also become residents of the district to which they transfer.

Since plaintiff returned to Illinois unaccompanied by his parents, the Board ruled he was ineligible. Rule 3.035[3] modifies the transfer rule to the extent that it authorizes review by the executive secretary where the student lives with a legal guardian. The parties do not dispute that by virtue of Illinois law that plaintiff, as an emancipated adult, cannot acquire a guardian. Plaintiff avers that if he were below the age of 18, his grandmother would be appointed as his guardian. Hence, he would not be ineligible to compete.[4]

Plaintiff raises two contentions. First, he argues he was denied due process of law, citing *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). Second, he argues that the fact that a high school student who transfers into another school district and is below the age of 18 can avoid the transfer rule while a student that age or above cannot violates equal protection. The court will consider his contentions in order.

Participation in interscholastic athletics is not a constitutionally protected civil right. *Colorado Seminary (U. of Den-*

---

**2.** On November 21, 1978 plaintiff filed a complaint challenging the rule in the Circuit Court of Cook County. The same day his motion for a temporary restraining order was denied. On November 29, a motion for preliminary injunction was presented and denied. A motion to dismiss has been taken under advisement in that action. Defendant argues that the instant action should be dismissed by virtue of the existence of the prior pending case. Generally, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *McClellan v. Carland*, 217 U.S. 2, 282, 30 S.Ct. 501, 505, 54 L.Ed.2d 762 (1910). *See also Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 662, 98 S.Ct. 2552, 2557, 57 L.Ed.2d 504 (1978). Under certain circumstances, exceptions to the general rule exist. Weighing the facts enunciated in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 1247, 47 L.Ed.2d 483 (1976), the court does not conclude facts constituting the clearest of justifications warranting dismissal exist.

Defendant's motion to dismiss on this ground must therefore be denied.

**3.** Rule 3.035 provides:

The eligibility of orphans, children from broken homes, children who are wards of the state or of a court, and children whose legal guardianship has been changed by a judge through the courts shall be subject to review by the Executive Secretary in cases involving a change of residence by students or parents or those with whom students are residing. An official ruling must be secured before any such students may be considered eligible.

**4.** In passing, the court notes that this argument is highly speculative. Rule 3.035 clearly states that assuming legal guardianship the eligibility shall be subject to review by the Executive Secretary. Plaintiff's argument that but for his status he would be permitted to play is therefore inaccurate inasmuch as the appointment does not guarantee eligibility.

ver) v. *NCAA*, 570 F.2d 320 (10th Cir. 1978) (per curiam); *Albach v. Odle*, 531 F.2d 983 (10th Cir. 1976) (per curiam); *Parish v. NCAA*, 506 F.2d 1028 (5th Cir. 1975); *Oklahoma High School Athletic Ass'n v. Bray*, 321 F.2d 269 (10th Cir. 1963). Although plaintiff could establish the existence of a property interest by reference to state law or custom, *see Board of Curators v. Horowitz*, 435 U.S. 78, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978), plaintiff fails to identify such authority.[5] Citing *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), plaintiff argues that the right to participate in such activities logically derives from the right of attendance holding of *Goss.* Such an argument is plainly without merit.

> The educational process is a broad and comprehensive concept with a variable and indefinite meaning. It is not limited to classroom attendance but includes innumerable separate components, such as participation in athletic activity and membership in school clubs and social groups, which combine to provide an atmosphere of intellectual and moral advancement. We do not read *Goss* to establish a property interest subject to constitutional protection in each of these separate components.

*Albach v. Odle*, 531 F.2d at 985. As the court noted in *Colorado Seminary*, the fact that one component of the educational "package" is removed, "does not necessarily mean that a constitutionally protected right of a student has thereby been violated." 570 F.2d at 321. The cases plaintiff cites in support of his due process claim are cases where clearly defined constitutional issues are presented within the context of athletic regulations. No such issues are presented here. *See Albach v. Odle*, 531 F.2d at 984.[6]

■ Plaintiff contends that the distinction between students 18 or above who transfer and the students below that age is irrational. He argues the distinction does not further a legitimate state purpose. In analyzing plaintiff's equal protection claim, the court must make the threshold determination of whether the transfer rule disadvantages a suspect class or interferes with a fundamental right protected by the Constitution. No such right or class is involved here. Whether the rule violates equal protection must be determined under the traditional rational basis standard. *See Moreland v. Western Pennsylvania Interscholastic Athletic League*, 572 F.2d 121 (3d Cir. 1978). In making the rational basis inquiry,

> The transfer rule is rational and bears a direct relationship to the result sought to be achieved: it effectively eliminates incentive both to recruit and to be recruited by a short-lived disqualification. All that rationality in this context requires is that the rule bear a logical relationship to its objective and have a reasonable likelihood of accomplishing it. Nor does the rule create any presumptions, irrebuttable or otherwise. The rule is merely prophylactic and its purpose is not to define the situations in which recruiting occurs, but rather to deter improper recruiting by means of a broadly sweeping rule. . . . There is no pretense that the transfer rule determines the true intent of matriculating students, while making relevant evidence of intent inadmissible in an adjudication. . . .
> All that need be shown, therefore is that the legislature chose "an objective criterion, one which the legislature considered to bear a sufficiently close nexus with underlying policy objectives to be used as the test for eligibility." *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457 at 2470, 45 L.Ed.2d 522.

*Id.* at 1269.

---

**5.** At the October 30 hearing, a witness for plaintiff testified that an inability to play would severely limit his chances of obtaining a college athletic scholarship. An expectation of an athletic scholarship interest does not amount to a property interest. *Parish v. NCAA*, 506 F.2d 1028, 1034 n. 17 (5th Cir. 1975) (alleged injury to hoped-for careers in professional basketball); *Taylor v. Alabama High School Athletic Ass'n*, 336 F.Supp. 54 (M.D.Ala.1972).

**6.** The court notes in addition that it appears that plaintiff has afforded more than minimal due process. He was permitted to present witnesses, cross-examine and make argument to the Board at the October 30 meeting. The eligibility hearing conducted by Mr. Miller established the three necessary components under Rule 3.041: that he moved from one high school district without his parents and that he did not have a guardian.

Plaintiff does not argue that the rule is invalid as a conclusive presumption. In the court's view, the rule is not invalidated thereby. In a somewhat similar context, the court in *Walsh v. Louisiana High School Athletic Ass'n*, 428 F.Supp. 1261 (E.D.La.1977) noted:

the court considers: "(1) the character of the classification in question; (2) the individual interests affected by it; and (3) the governmental interests asserted in support of it." *Walsh v. Louisiana High School Athletic Ass'n*, 428 F.Supp. 1261, 1270 (E.D. La.1977). The classification in question effectively prevents students 18 and older who transfer to another school district without their parents from participating in interscholastic athletics for not more than one year. Students below that age may be able to procure a guardian and therefore may be able to play immediately. The governmental interest supporting such a rule is to prevent so-called district hopping.

 It is clear that the distinction rationally furthers a legitimate state interest. The rule is designed to assure fair competition. *See Mitchell v. Louisiana High School Athletics Ass'n*, 430 F.2d 1155 (5th Cir. 1970). By virtue of its disqualification, the rule eliminates the incentive to recruit and be recruited. The age distinction furthers these goals. A student below the age of 18 is more restrained from moving from district to district by the requirement he move with his parents or guardian. An 18-year-old by virtue of attaining his majority is under no such requirement. Since he is free to move about, more vigilance with regard to district hopping is clearly justified, i. e. preventing him from participation by virtue of his change of district unaccompanied by a parent. If this were not the case, a 18-year-old could ignore parental restraint and select the district he preferred in the absence of any restraint. The total exclusion of 18-year-olds is a rational response to this problem. The theoretical alternative of individual hearings could pose both substantial financial and time burdens as well as difficulties of proof which the state could legitimately avoid through employment of the exclusion. The rule, therefore, must be upheld.

Accordingly, defendant's motion for summary judgment is granted and this case is dismissed. Judgment is entered for the defendant.

It is so ordered.